UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EMPLOYEE PAINTERS' TRUST, et al.,

              Plaintiffs,

       v.

CASCADE COATINGS, et al.,

              Defendants.

CASE NO. C12-0101JLR

ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

## I.   INTRODUCTION

Before the court is Plaintiffs'[1] motion for default judgment against Defendant Mark Schlatter pursuant to Federal Rule of Civil Procedure 55(b)(2).  (Mot. (Dkt. # 68).)

---

[1] Plaintiffs include:  the Employee Painters' Trust, the Western Washington Painters Defined Contribution Pension Trust, the District Counsel No. 5 Apprenticeship and Training Trust Fund, the Western Washington Painters Labor Management Cooperation Trust, the International Painters and Allied Trades Industry Pension Fund, and The International Union of Painters and Allied Trades District Counsel No. 5 (collectively "Plaintiffs").

ORDER- 1

1   The court has considered the motion, Plaintiffs' supporting declarations (Read Decl.

2   (Dkt. ## 68-1, 68-2), James Decl. (Dkt. # 68-3), Urban Decl. (Dkt. ## 68-5, 68-6)), and

3   the applicable law, and DENIES Plaintiffs' motion WITHOUT PREJUDICE as stated

4   below.

5                                    **II.   BACKGROUND**

6   **A.   Factual Background**

7          This is an employer benefits contribution case governed by the Employee

8   Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Among

9   others, Plaintiffs have sued two "Cascade Coatings" entities:  (1) Defendant Cascade

10  Coatings, a partnership ("Cascade Partnership"), which is a partnership comprised of

11  Defendants Walter James McLaughlin and Mark Stephen Schlatter (*see* Am. Compl.

12  (Dkt. # 47) ¶ 4), and (2) Defendant Cascade Coatings, Mr. Schlatter's sole proprietorship

13  ("Cascade Proprietorship") (*see id.* ¶ 5) (collectively "Cascade Coatings").

14         The dispute arises as a result of Cascade Coatings' alleged involvement as a

15  subcontractor on the Seattle-Tacoma International Airport Modernization Project

16  ("Airport Modernization Project").[2]  A Project Labor Agreement ("PLA") governs work

17  _____

18         [2] Plaintiffs never make clear what part of the Airport Modernization Project Cascade
     Coatings worked on and whether this sub-project was covered by the Project Labor Agreement
19   ("PLA").  (*See* 2d Am. Compl.)  Although Plaintiffs refer to work on the "Port of Seattle Bus
     Maintenance Facility" in passing (*see id.* ¶ 16 ("Airport Modernization Project, aka Port of
20   Seattle Bus Maintenance Facility")), and the audit report cites this same sub-project (*see* Read
     Decl. Ex. H), this sub-project is not described in the PLA as within the scope of the Airport
21   Modernization Project.  (*See* Read Decl. Ex. A at 6-7.)  Furthermore, the record does not indicate
     that the Airport Modernization Project was expanded to include the Bus Maintenance Facility.
22   (*See* Dkt.)

ORDER- 2

1    done on the Airport Modernization Project and requires contractors to adhere to

2    collective bargaining agreements.  (*See* Read Decl. Ex. A at 9.)  In order to work on any

3    part of the Airport Modernization Project, a contractor must sign a "Letter of Assent"

4    agreeing to the terms and conditions of the PLA and collective bargaining agreements.

5    (*Id.* Ex. A at 19.)  The PLA and collective bargaining agreements require contractors to

6    submit written reports and pay fringe benefit contributions to trusts benefitting local

7    unionized construction workers.  (*See id.* Ex. A at 11-12.)

8         On September 12, 2011, a representative of Cascade Coatings allegedly executed a

9    letter of assent agreeing to be bound by the terms of the PLA.  (2d Am. Compl. ¶ 21.)[3]

10   Subsequently, Cascade Coatings submitted two monthly reports to the Employee

11   Painters' Trust ("Painters' Trust") listing its employees who performed work covered by

12   the PLA and the number of hours worked.  (Read Decl. ¶ 24.)  Cascade Coatings also

13   paid fringe benefit contributions for these employees.  (*Id.*)[4]  However, Cascade Coatings

14   did not submit any subsequent reports or payments to the Trust.  (*See generally* 2d Am.

15   Compl.)  Thereafter, Painters' Trust initiated this lawsuit because it believed Cascade

16   Coatings to be in breach of its obligations to report and make contributions pursuant to

17

18        [3] The record does not contain a copy of the letter of assent signed by Cascade Coatings.

19   (*See* Dkt.)

20        [4] There is a discrepancy in the record as to when these reports and payments were made.
     Mr. Read, who works as an administrator for the trusts, states in his declaration, "Mark Schlatter,

21   under the trade name Cascade Coatings, submitted only two monthly reports to the Trust Funds,
     for the months of September and October 2011."  (Read Decl. ¶ 24.)  Conversely, Lindquist

22   LLP, the firm who audited Cascade Coatings, states in its audit report, "[t]he Employer first and
     last reported to the Trust for hours worked in October 2011."  (Read Decl. Ex. H at 146.)

1   the letter of assent, the PLA, underlying collective bargaining agreements, and ERISA.

2   (*Id.*)

3   **B.**   **Procedural Background**

4         On January 18, 2012, Painters' Trust filed suit against Mr. Schlatter, his business

5   partner Mr. McLaughlin, and their business partnership Cascade Partnership.  (Compl.

6   (Dkt. # 1) ¶ 4.)  Painters' Trust did not originally sue Cascade Proprietorship.  (*See*

7   *generally id.*)  Painters' Trust's complaint sought damages and injunctive relief for

8   Defendants' alleged failure to make employee benefit contributions.  (*See* Compl. ¶¶ 24-

9   35.)  On June 27, 2012, Painters' Trust filed an affidavit of proof of service, which attests

10   to having served "Defendant Cascade Coatings" with a copy of the summons and

11   complaint on April 17, 2012.  (Aff. of Serv. (Dkt. # 8) at 1.)  Later, in the joint status

12   report filed on August 17, 2012, Painters' Trust implied that it had served Mr. Schlatter

13   by stating, "[o]nly Walter James McLaughlin has not been served because he cannot be

14   found."  (*See* Joint Stat. Rep. (Dkt. 12) at 5.)  There is no indication in the record that Mr.

15   McLaughlin has ever been served.  (*See generally* Dkt.)

16         After the Parties' joint status report, Plaintiffs amended their complaint twice.

17   Initially, Painters' Trust amended its complaint on October 3, 2012.  (Am. Compl.

18   (Dkt. # 17).)  The amended complaint named additional trust plaintiffs and additional

19   defendants, including Cascade Proprietorship, the Port of Seattle, and various insurance

20   companies.  (*Id.* ¶ 5.)  The amended complaint asserted bond claims against the new

21   insurance company defendants and a common law unjust enrichment claim against the

22   Port of Seattle.  (*See* Am. Compl. ¶¶ 53-65.)  Thereafter, Plaintiffs amended their first

ORDER- 4

amended complaint on July 3, 2013.  (*See* 2d Am. Compl.)  Neither Mr. Schlatter,

Cascade Proprietorship, nor Cascade Partnership has ever answered Plaintiffs'

complaints.  (*See* Dkt.)

Next, on August 27, 2013, Plaintiffs filed three motions for entry of default, one

each against Mr. Schlatter, Cascade Proprietorship, and Cascade Partnership.

(Dkt. ## 48-50.)  The court denied these motions because Mr. Schlatter and Cascade

Partnership were not properly served with Plaintiffs' first or second amended complaints.

(*See* 9/30/13 Ord. (Dkt. # 51) at 9-10.)  The court also ordered Plaintiffs to show cause

why Cascade Proprietorship should not be dismissed for being an improperly named

party in the suit.  (*Id*.)  In response to the court's show cause order, Plaintiffs filed notice

of voluntary dismissal as to Cascade Proprietorship.  (10/15/13 Not. (Dkt. # 53).)

Subsequently, on November 6, 2013, Plaintiffs filed a motion to dismiss many of

their bond claims under Federal Rule of Civil Procedure 41(a)(2).  (Mot. to Dismiss

(Dkt. # 61).)[5]  Plaintiffs wished to dismiss these claims because they had settled with

most insurance company defendants.  The court granted this motion to dismiss on

December 2, 2013.  (12/2/13 Ord. (Dkt. # 67).)

Buried within their motion to dismiss, Plaintiffs also mentioned their intention to

dismiss Cascade Partnership and Mr. McLaughlin as defendants under Federal Rule of

Civil Procedure 41(a)(1)(A)(i); however, Plaintiffs never provided formal notice to the

---

[5] Plaintiffs dismissed all of their bond claims except for those against Platte River
Insurance Company.  (*See* Mot. to Dismiss at 5-6.)

1   court voluntarily dismissing the claims against these Defendants.  (*See, e.g.*, Mot. to

2   Dismiss at 6 ("As to Coatings, a partnership [sic] and Walter James McLaughlin, these

3   parties are being dismissed via FRCP 41(a)(1)(A)(i).").)  Although Federal Rule of Civil

4   Procedure 41(a)(1)(A)(i) allows plaintiffs to voluntarily dismiss an action without a court

5   order, it requires "a notice of dismissal." [6]  Fed. R. Civ. P. 41(a)(1)(A)(i).  Thus, Cascade

6   Partnership and Mr. McLaughlin are still defendants.

7        Plaintiffs renewed their motion for default against Mr. Schlatter in early

8   November.  (*See* 11/6/13 Mot. for Def. (Dkt # 62).)  This time, the court granted

9   Plaintiffs' motion because they showed that Mr. Schlatter had been served with the

10  summonses and complaints, and that he had never answered.  (11/15/13 Ord. (Dkt. # 65);

11  *see generally* Dkt.)  The court has entered default only against Mr. Schlatter and not any

12  other defendants.  (*See generally* Dkt.)

13       Plaintiffs now seek a default judgment against Mr. Schlatter in accordance with

14  Federal Rule of Civil Procedure 55(b).  (*See* Mot.)  Plaintiffs also ask the court to award

15  damages against Mr. Schlatter for unpaid fringe benefit contributions, liquidated

16  damages, interest, audit costs, and attorney's fees and costs.  (*Id.* at 2.)

17

18  ———————————

19  [6] While the federal rules do not explain what kind of notice is required under Federal
    Rule of Civil Procedure 41(a)(1)(A)(i), and notice in the form of a motion can be sufficient, the
    cases contemplate a formal motion inadvertently made under 41(a)(1)(A)(i), and not a single

20  sentence tucked deep within some other motion as is the case here.  *See* 9 Charles Alan Wright &
    Arthur R. Miller, *Federal Practice and Procedure* § 2363 (3d ed. 2013) ("The cases seem to

21  make it clear that the notice is effective at the moment it is filed with the clerk . . . [and that] a
    notice in the form of a motion is sufficient . . . .") (*citing Williams v. Clarke*, 82 F.3d 270, 272

22  (8th Cir. 1996) (plaintiff's first motion to dismiss sought the permission of the court, but the
    court properly construed it as a notice of voluntary dismissal)).

1                                                            **III.   ANALYSIS**

2 **A.    The *Frow* Rule Prohibits Default Judgment**

3         As a threshold matter, it would be an abuse of discretion for this court to grant

4 Plaintiffs' motion for default judgment because Plaintiffs allege the same claims against

5 Mr. Schlatter and the non-defaulted jointly and severally liable co-defendants, Mr.

6 McLaughlin and Cascade Partnership.  Supreme Court and Ninth Circuit precedent

7 prohibit default judgment where a default judgment against one defendant could be

8 inconsistent with a judgment on the merits in favor of other defendants.  *See Frow v. De*

9 *La Vega*, 82 U.S. 552, 554 (1872); *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th

10 Cir. 2001).

11         Courts have discretion to enter default judgment as to fewer than all defendants.

12 Fed. R. Civ. P. 54(b); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

13 However, the general rule is that, "when one of several [jointly liable]

14 defendants . . . defaults, judgment should not be entered against that defendant until the

15 matter has been adjudicated with regard to all defendants, or all defendants have

16 defaulted."  10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

17 *Procedure* § 2690 (3d ed. 2013) (*citing Frow*, 82 U.S. at 554).  In setting out this rule, the

18 Supreme Court warned against circumstances that could lead to logically inconsistent

19 adjudications as to liability.  *Frow*, 82 U.S. at 554 ("Such a state of things is unseemly

20 and absurd, as well as unauthorized by law.").  Thus, the rule focuses on whether a

21 judgment on the merits in favor of some defendants could be inconsistent with a default

22 judgment against a jointly liable defendant.  Where *Frow* applies, it would be an abuse of

1   discretion for the court to enter a default judgment against some but not all defendants

2   prior to adjudicating the claims against the non-defaulted defendants.  *Gulf Coast Farms*

3   *v. Midwest Elec. Imp.*, 740 F.2d 1499, 1511-12 (11th Cir. 1984).

4           Moreover, the Ninth Circuit has held that *Frow* is not limited to complaints

5   asserting only joint liability, but extends to circumstances where the defendants have

6   closely related defenses or are otherwise similarly situated.  *See First T.D.*, 253 F.3d at

7   532.  In *First T.D.*, the Ninth Circuit considered whether the trial court acted properly

8   when it granted summary judgment in favor of 18 of 132 similarly situated investor-

9   defendants on the question of whether defendants' interests were secured in a bankruptcy

10  proceeding, but also granted a default judgment against 88 non-answering defendants.

11  *Id.* at 525.  The Court concluded that, because each individual defendant's transaction

12  followed an identical pattern with almost identical legal documents, it would be

13  inconsistent to allow recovery against defaulting defendants on a legal theory that had

14  been rejected by the court as to the answering defendants.  *Id.* at 532.  Thus, in the Ninth

15  Circuit, the similar nature of the claims, facts, and legal issues asserted in the complaint

16  relative to each defendant is considered in addition to whether defendants are "jointly"

17  liable.

18          Under *Frow* and *First T.D.*, the court finds that it would be an abuse of discretion

19  to grant Plaintiffs' motion for default against Mr. Schlatter when Plaintiffs allege the

20  same claims against Cascade Partnership and Mr. McLaughlin, when Plaintiffs reference

21  the same supporting facts, and when all three Defendants are jointly and severally liable.

22  For instance, Plaintiffs' complaint states in relevant part:

ORDER- 8

Defendant Walter James McLaughlin ("McLaughlin") was and/or is a partner, officer and decision maker of [Cascade Partnership] . . . .

\*\*\*\*\*\*\*\*\*\*

Defendant Mark Stephen Schlatter was and/or is a partner, officer, and decision maker of [Cascade Partnership] and the sole proprietor of [Cascade Proprietorship.]

\*\*\*\*\*\*\*\*\*\*

Defendants McLaughlin and Schlatter operated [Cascade Partnership] as a partnership.

\*\*\*\*\*\*\*\*\*\*

Defendant [Cascade Partnership] and/or [Cascade Proprietorship] breached the Labor Agreements by Failing to timely and properly submit reports and contributions to the Trusts.

\*\*\*\*\*\*\*\*\*\*

Defendants McLaughlin and/or Schlatter became personally bound, either as [Cascade Partnership's] partners and/or business officers or [Cascade Proprietorship's] sole proprietor and/or business officers, to the terms of the Labor Agreements collectively and or [sic] individually as the case may be.

(2d Am. Compl. ¶¶ 8-9, 27, 32, 46.)

Plaintiffs' complaint shows that any potential liability against Mr. Schlatter, Mr. McLaughlin, or Cascade Partnership is based on the same set of facts:  signing the letter of assent and failing to submit reports and contributions to the trusts.  The complaint also alleges the same breach of contract claim against the three Defendants, and alleges the same personal liability and breach of fiduciary duty claims against Mr. Schlatter and Mr. McLaughlin.  (*Id.* ¶¶ 31-37, 45-52.)  Mr. Schlatter and Mr. McLaughlin may also be personally liable for breaching the PLA because, as partners in Cascade Partnership, they are liable jointly and severally for all obligations of the partnership under Washington

ORDER- 9

law.  RCW 25.05.125.  Based on these shared claims and facts, it is easy to imagine a

situation where adjudication on the merits for Mr. McLaughlin or Cascade Partnership

could be contrary to the default judgment against Mr. Schlatter.  Although this situation is

remote because Cascade Partnership has not answered Plaintiffs' complaints and Mr.

McLaughlin has not been served, the potential is there.  A default has not been entered

against Cascade Partnership and Mr. McLaughlin, and they have not been properly

dismissed from this case.  Thus, the court finds that it is inappropriate to enter default

judgment against Mr. Schlatter at this time.

**B.      The *Eitel* Factors Weigh Against Granting Default Judgment**

The court finds that the *Eitel* factors also weigh against granting default judgment.

Courts may order default judgment after the entry of default pursuant to Federal Rule of

Civil Procedure 55(b)(2), but entry of default judgment is left to the court's sound

discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its

discretion, the court considers seven factors (the "*Eitel* factors"):  (1) the possibility of

prejudice to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims;

(3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake;

(5) the possibility of a dispute concerning material facts; (6) whether the default was due

to excusable neglect; and (7) the strong policy favoring decisions on the merits when

reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

At the default judgment stage, the court presumes all well-pleaded factual

allegations related to liability.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

(9th Cir. 1987).  The court, however, does not presume any factual allegations related to

ORDER- 10

1  the amount of damages. *Id.* Thus, the plaintiff is required to prove all damages sought in

2  the complaint, and the court must ensure that the amount of damages is reasonable and

3  demonstrated by the evidence. Fed. R. Civ. P. 55(b); Fed. R. Civ. P. 8(b)(6); *TeleVideo*,

4  826 F.2d at 917-18. Also, "[a] default judgment must not differ in kind from, or exceed

5  in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

6      Default judgment is not warranted in this case. After weighing all of the *Eitel*

7  factors, the court finds that the second, third, fourth, fifth, and seventh factors weigh

8  against default judgment. Although the first and sixth factors favor default judgment, on

9  balance, the factors do not support default judgment against Mr. Schlatter at this time.

10      1.  Factors Weighing Against Default Judgment

11      The second, third, and fifth *Eitel* factors weigh against default judgment because

12  Plaintiffs do not establish Mr. Schlatter's liability, and there could be a material factual

13  dispute about whether he owes additional employer contributions. The second and third

14  *Eitel* factors focus on the merits of the plaintiff's substantive claim and the sufficiency of

15  the complaint. *Eitel*, 782 F.2d at 1471-72. Courts frequently examine these factors

16  together, and the Ninth Circuit has suggested that they require a plaintiff to state a claim

17  on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978);

18  *accord PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d. 1172, 1175 (C.D. Cal. 2002).

19  This requires establishing a prima facie case. *Danning*, 572 F.2d at 1388; *see also*

20  *Microsoft Corp. v. Lopez*, No. C08-1743JCC, 2009 WL 959219, at *2 (W.D. Wash. Apr.

21  7, 2009).

22

1   Additionally, the fifth factor requires the court to consider whether there is any

2   possibility of a material dispute as to the facts.  *Eitel*, 782 F.2d at 1471-72.  Although

3   courts will accept as true all well-pleaded allegations regarding liability, necessary facts

4   not contained in the pleadings and legally insufficient claims are not established by

5   default.  *Danning*, 572 F.2d at 1388.  Thus, where pleadings are insufficient to establish

6   liability, the possibility of a material factual dispute can also arise.

7   To show substantive merit, sufficient pleading, and no possibility of a material

8   factual dispute, Plaintiffs must establish a prima facie case that Mr. Schlatter was

9   required to pay fringe benefit contributions and that he breached these obligations.  (*See*

10  Read Decl. Ex. A at 11; 2d. Am. Compl. ¶¶ 32-33.)  Plaintiffs' claim is for a violation of

11  ERISA § 515, which requires "every employer who is obligated to make contributions to

12  a multiemployer plan . . . [to] make [them] in accordance with the terms and conditions

13  of such plan or agreement."  29 U.S.C. § 1145; *see also* 29 U.S.C. § 1132(a)(3)

14  (establishing a trust's right to sue to enforce the terms of multiemployer plans).  In order

15  to successfully assert this claim, Plaintiffs must prove:  (1) that they are multiemployer

16  trusts; (2) that the PLA, letter of assent, and collective bargaining agreement obligated

17  Mr. Schlatter to make employee benefit contributions; and (3) that Mr. Schlatter failed to

18  make contribution payments.  *See Bd. of Trs. of the Sheet Metal Workers Health Care*

19  *Plan of N. Cal. v. Gervasio Envtl. Sys.*, No. C03-04858, 2004 WL 1465719, at *2 (N.D.

20  Cal. May 21, 2004) (stating the elements of a § 515 claim).

21  Although Plaintiffs' complaint and motion for default judgment contain some

22  relevant facts, they do not establish a prima facie case against Mr. Schlatter.  Plaintiffs'

ORDER- 12

1   complaint and motion for default judgment establish:  (1) that Plaintiffs are

2   multiemployer trusts (Read Decl. ¶ 10); (2) that Mr. Schlatter signed a letter of assent

3   obligating him to adhere to the PLA (2d. Am. Compl. ¶ 21); (3) that the PLA obligates

4   Mr. Schlatter to pay employer contributions for employee work done on a PLA-covered

5   project (Read Decl. Ex. A); (4) that Mr. Schlatter sent the trust administrators reports and

6   contributions for two months ending in October 2011 (Mot. at 4); and (5) that Mr.

7   Schlatter did not submit reports and contribution payments thereafter nor did he submit to

8   an audit of his employment records (*id.*).  These facts do not establish liability as to

9   whether Mr. Schlatter owes additional employee contributions because they do not

10  establish whether he was obligated to continue reporting to the trusts or obligated to pay

11  contributions after October 2011.  Despite Plaintiffs' bald assertion that "the Trusts have

12  confirmed that [Cascade Partnership] and/or [Cascade Proprietorship] provided labor to

13  the Project and have failed to fully or properly report labor and pay contributions to the

14  Trusts" (2d Am. Compl. ¶ 34), the court cannot determine whether Mr. Schlatter is liable

15  for unpaid contributions without any information in the record about the scope of Mr.

16  Schlatter's project under the PLA, the number of his employees dedicated to the PLA

17  project, the identity of these employees, and the number of months his employees worked

18  on the project.  These material facts are missing from the record, they are necessary to

19  establish a prima facie case, and they could be disputed.

20      Plaintiffs' audit report, submitted with their motion for default, does not supply the

21  missing facts.  The audit report explains that to determine the alleged amount of Mr.

22  Schlatter's unpaid employer contributions, auditors "compared the hours reported to the

1    Trust to the hours listed in the Washington State Department of Labor and Industries

2    audit report [and] . . . summarized the findings and calculated the liquidated damages and

3    interest due to the Fund, as per the Trust Agreement." (Read Decl. Ex. H at 145.)

4    However, the audit report does not explain how the auditors determined that the

5    employees listed actually worked for Mr. Schlatter on the PLA project. (*See* Read Decl.

6    Ex. H. at 148-49.) Because there is no connection between the employees listed and the

7    PLA project, key factual information regarding liability is missing. Plaintiffs have not

8    adequately pleaded their unpaid contribution claim and therefore the second, third, and

9    fifth *Eitel* factors weigh against default.

10            The fourth *Eitel* factor, the sum of money at stake, also weighs against granting

11   Plaintiffs' motion. In general, default judgment is disfavored if there are large sums of

12   money involved. *Eitel*, 782 F.2d at 1472. This factor "balances the amount of money at

13   stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp.

14   2d at 1175. Thus, when the amount of money is unreasonable in light of the potential

15   loss caused by the defendant's actions, the factor weighs against default judgment.

16   *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594, 2007 WL 1545173, at

17   *12 (N.D. Cal. May 29, 2007). Here, Plaintiffs ask for $19,345.51 in delinquent fringe

18   benefits contributions, $2,396.12 in liquidated damages, at least $4,060.96 in interest,

19   $1,403.00 in audit fees, and $49,711.04 in attorney's fees and costs. (*See* Mot. at 15.)

20   This amounts to almost $77,000.00 in damages. Plaintiffs themselves characterize this

21   amount as "a large sum of money." (Mot. at 12.) Although ERISA authorizes such an

22   award (*see* 29 U.S.C. § 1132(g)(2)), and it is within the range awarded by other courts in

1  ERISA unpaid contribution cases,[7] the problems with the substantive merits of Plaintiffs'

2  claims and the potential for material factual disputes renders such a large award

3  unreasonable.  *See Eitel*, 782 F.2d at 1472 (stating that a substantial judgment, considered

4  in light of the parties' dispute as to material facts, supported the court's decision not to

5  grant default judgment); *accord Truong*, 2007 WL 1545173, at *12 (finding that the

6  factor weighed against default because the sum sought was unsupported by evidence in

7  the record).  Also, as addressed below, the court finds that the amount of attorney's fees

8  requested is considerably inflated compared to what ERISA authorizes; this fact also

9  weighs against the reasonableness of the damages sought.  The court thus finds that the

10  fourth *Eitel* factor weighs against default.

11       The seventh *Eitel* factor, the policy favoring decisions on the merits, also weighs

12  against granting Plaintiffs' motion.  The seventh factor reflects the general principle that

13  cases should be decided on their merits whenever reasonably possible.  *See Pena v.*

14  *Seguros La Commercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).  This factor almost

15  always weighs strongly against default judgment, although it is not dispositive.  *See, e.g.*,

16  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010)

17  (factor not dispositive where a defendant fails to appear or defend itself in the action and

18  the other factors favor granting the motion); *Phillip Morris USA, Inc., v. Castworld*

19  _____

20       [7] In other § 515 employer contribution cases, courts in this circuit have awarded default
   judgments for unpaid contributions, liquidated damages, interest, and attorneys fees in amounts
21  ranging from $24,000.00 to almost $190,000.00.  *Compare Wine v. Winifred Elec. Inc.*, No. CV-
   09-638-PHX-DGC, 2009 WL 1942887, at *2 (D. Ariz. July 2, 2009), *with Bd. of Trs. of V.A.*
22  *Local No. 159 Health and Welfare Trust Fund v. RT/DT, Inc.*, No. C12-0511JSW, 2013 WL
   2237871, at *10 (N.D. Cal. May 21, 2013).

1   *Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (noting "the mere existence of Fed. R.

2   Civ. P. 55(b) indicates that [the seventh] *Eitel* factor is not alone dispositive"). Here,

3   other factors favor not granting default judgment, and thus, the court finds that this factor

4   weighs against granting Plaintiffs' motion.

5       2.   Factors Favoring Default Judgment

6       Only two *Eitel* factors favor default judgment—the first and the sixth. The first

7   *Eitel* factor is the possibility of prejudice to the plaintiff if relief is denied. On a motion

8   for default judgment, "prejudice" exists where the plaintiff has no "recourse for

9   recovery" other than default judgment. *Philip Morris*, 219 F.R.D. at 499. In evaluating

10  this factor, the court must look at whether, if default judgment is denied, the plaintiff

11  would be deprived of a remedy until such time as the defendant chooses to participate.

12  *See, e.g.*, *Craigslist*, 694 F. Supp. 2d. at 1061 ("[W]here a defendant's failure to appear

13  makes a decision on the merits impracticable, if not impossible, entry of default judgment

14  is warranted.").

15      Here, Plaintiffs are likely to be prejudiced because default judgment is their only

16  recourse to recover from Mr. Schlatter. Plaintiffs have already spent a significant amount

17  of time litigating this matter, Mr. Schlatter has not responded to any of their three

18  complaints (*see* Dkt.), and Mr. Schlatter's counsel has withdrawn from the case

19  (*see* 11/15/13 Ord. (Dkt. # 65).) It is doubtful that Mr. Schlatter will ever participate in

20  the litigation, which makes a judgment on the merits impracticable. The court notes,

21  however, that any prejudice to Plaintiffs is mitigated by the fact that the court is denying

22

Plaintiffs' motion for default judgment without prejudice.  Nevertheless, the first factor supports entry of default judgment.

The sixth factor, whether the entry of default is due to excusable neglect, also favors entry of default judgment.  In other contexts, "excusable neglect" has been defined by its constituent parts.  *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (1997).  Neglect "has its normal, expected meaning, i.e., negligence, carelessness, inadvertent mistake."  *Id.*  Courts determine whether neglect is excusable using four factors based on equitable principles:  "(1) danger of prejudice . . . , (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  In the default judgment context, there is no excusable neglect where a defendant is "properly served with the Complaint, the notice of entry of default, [and] papers in support of the [default judgment] motion."  *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).  Further, "the possibility of excusable neglect is remote" where a defendant participated early in a case, but later stopped participating.  *PepsiCo*, 238 F. Supp. 2d. at 1177.

There is no indication of excusable neglect in this case.  The entry of default against Mr. Schlatter was due to his failure to respond to any of Plaintiffs' complaints despite pre-litigation contact and his counsel's appearance in the action.  (*See* 11/15/13 Ord. (Dkt. # 64) at 2.)  Mr. Schlatter was served with the second amended complaint on September 20, 2013 (*see* Cert. of Serv. (Dkt. # 52)), and he failed to timely answer this or

1   any other complaint.  (*See generally* Dkt.)  Mr. Schlatter had notice and opportunity to

2   appear in this litigation before Plaintiffs moved for default judgment; he did not do so.

3   Thus, the court finds that there is no excusable neglect and this factor supports default.

4        On balance, the *Eitel* factors do not support default judgment at this time.

5   Plaintiffs have failed to allege a prima facie case against Mr. Schlatter under ERISA

6   § 515, there is a possibility of material factual disputes, and the amount of damages

7   requested is unreasonable.  These factors outweigh the possible prejudice to Plaintiffs'

8   and outweigh the fact that Mr. Schlatter's default was not due to excusable neglect.

9   Accordingly, the court DENIES Plaintiffs' motion for default judgment.

10  **C.     Plaintiffs Have Not Substantiated Their Damages Claims**

11       While not an independent basis for denying Plaintiffs' motion, the court notes that

12  Plaintiffs have not properly substantiated their damages as required by the Federal Rules

13  of Civil Procedure and this court's Local Rules.  *See* Fed. R. Civ. P. 55; Local Rules

14  W.D. Wash. LCR 55(b)(2)(A).  The court finds deficiencies in the amounts Plaintiffs

15  claim for unpaid employer contributions, interest, liquidated damages, and attorney's

16  fees.

17       Generally, default judgment is a two step process:  first, the court determines that a

18  default judgment should be entered; then, it determines the amount and character of the

19  recovery that should be awarded.  *TeleVideo*, 826 F.2d at 915.  The court must ensure that

20  the amount of damages is reasonable and demonstrated by the evidence, and the court

21  may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing

22  to make its determination.  Fed. R. Civ. P. 55(b); *TeleVideo*, 826 F.2d at 917-18; *Geddes*

ORDER- 18

1    *v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(b)(6)

2    ("An allegation—other than one relating to the amount of damages—is admitted if a

3    responsive pleading is required and the allegation is not denied.").  Additionally, this

4    court's Local Rules require Plaintiffs to provide:

> a concise explanation of how all amounts were calculated, and shall support
> this explanation with evidence establishing the entitlement to and amount
> of the principal claim, and, if applicable, any liquidated damages, interest,
> attorney's fees, or other amounts sought.  If the claim is based on a
> contract, plaintiff shall provide the court with a copy of the contract and
> cite the relevant provisions.

8    Local Rules W.D. Wash. LCR 55(b)(2)(A).  Here, Plaintiffs fail to provide the requisite

9    evidence to establish their damages claims because they either:  (1) do not demonstrate

10   that they are legally entitled to the amounts requested or (2) do not provide a concise

11   explanation of how the amounts were calculated.

12       1.   Employer Contribution Amount

13       First, as discussed previously, Plaintiffs do not prove that Mr. Schlatter owes them

14   unpaid employer contributions, let alone prove the amount of these contributions.

15   Although Plaintiffs' audit report contains both a summary of the total unpaid employer

16   contributions and unpaid employer contributions by employee, it does not contain any

17   information demonstrating that these employees actually worked on the project covered

18   by the PLA.  (Read Decl. Ex. H. at 147-49.)  Also, the audit does not give any

19   information as to the rates the auditors used to determine the appropriate employer

20   contribution levels for the various trusts.  Without this information, the court cannot

21

22

1 | evaluate the reasonableness of the unpaid contribution damages amount because it cannot

2 | determine whether the amount was calculated using the proper rates.  (*Id.*)

3 |       2. <u>Interest and Liquidated Damages</u>

4 |       Plaintiffs also do not provide adequate information to substantiate their liquidated

5 | damages or interest claims.  ERISA states in relevant part, "the court shall award the

6 | plan . . . (B) interest on unpaid contributions, [and] (C) an amount equal to the greater

7 | of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under

8 | the plan in an amount not in excess of 20 percent (or such higher percentage as may be

9 | permitted under Federal or State law) of the [unpaid employer contributions] . . . ."

10 | 29 U.S.C. §§ 1132(g)(2)(B)-(C).  The statute awards both interest and liquidated damages

11 | to parties who obtain judgments in favor of trusts.  *See Plumbers & Pipefitters Nat.*

12 | *Pension Fund v. Eldridge*, 232 Fed. App'x 680, 683 (9th Cir. 2007).

13 |       Here, most of the underlying trust agreements state that interest on unpaid

14 | employer contributions is 12 percent per annum.  (*See* Read Decl. ¶ 25.)  However, one

15 | trust agreement states that interest should be calculated at the rate established under 26

16 | U.S.C. § 6621 for the underpayment of taxes.  (*Id.*)  This code provision sets interest at

17 | the sum of the federal short-term rate plus three percentage points.  26 U.S.C.

18 | § 6621(a)(2).  Plaintiffs do not state the interest rate they used for this rate calculation;

19 | they merely provide a total interest amount for the combined underpayments to the trusts,

20 |

21 |

22 |

ORDER- 20

1  and therefore, the court does not have enough information to determine whether interest

2  is reasonable and calculated using the proper rates.[8]

3      Additionally, ERISA awards liquidated damages in the amount that is equal to the

4  greater of either interest or liquidated damages designated by the trust agreement.  Here,

5  Plaintiffs improperly ask for liquidated damages in the amount designated by the trust

6  agreements, when the statute requires liquidated damages equal to the interest, because it

7  is the greater number.  29 U.S.C. § 1132(g)(2)(C); *see Morarty ex rel. Local Union No.*

8  *727 v. SVEC*, 429 F.3d 710, 721 (7th Cir. 2005) (upholding a double interest award);

9  *accord Board of Tr. of Laborers Health and Welfare Trust Fund for N. Cal. v. Shade*

10  *Const. and Eng'g*, No. 06-6830 PJH, 2007 WL 3071003, at *6 (N.D. Cal. Oct. 19, 2007)

11  (awarding double interest under 29 U.S.C §§ 1132(g)(2)(B)-(C)).

12      3.  Attorney's Fees

13      Finally, Plaintiffs miscalculate their requested attorney's fees and costs.  Although

14  ERISA requires courts to award attorney's fees and costs when a trust obtains a judgment

15  against a defendant on an employer contribution claim, the attorney's fees and costs

16  awarded are limited to those incurred from obtaining that specific judgment.  29 U.S.C.

17  § 1132(g)(2)(D).  ERISA states, "In any action under this subchapter . . . to enforce

18  section 1145 of this title in which a judgment in favor of the plan is awarded, the court

19  shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by

20  the defendant."  *Id*.  If the court granted default judgment in favor of Plaintiffs and

21

22  [8] Plaintiffs also ask the court to increase the interest award by $4.92/day but do not
provide any information as to how they arrived at this per diem amount.  (Mot. at 15 n. 3.)

1   against Mr. Schlatter, Plaintiffs would be entitled to reasonable attorney's fees associated

2   with the judgment on their § 1145 claim.  However, Plaintiffs would not be entitled to

3   attorney's fees for their claims against other defendants not brought under ERISA to

4   enforce § 1145.  Specifically, Plaintiffs are not entitled to attorney's fees under

5   § 1132(g)(2)(D) for their state law bond claims against insurance company defendants or

6   for their common law unjust enrichment claim against the Port of Seattle.  Thus,

7   Plaintiffs overstate the amount of attorney's fees and costs they should be awarded

8   because they improperly seek attorney's fees and costs for the entire cost of pursuing this

9   litigation, not just for those fees and costs incurred from pursuing their § 1145 claim

10  against Mr. Schlatter.[9]

11                          **IV.    CONCLUSION**

12         For the foregoing reasons, the court DENIES Plaintiffs' motion for default

13  judgment against Mr. Schlatter (Dkt. # 68) WITHOUT PREJUDICE.  If Plaintiffs wish to

14  /

15  /

16  /

17  /

18

19  _____

20         [9] Numerous entries in the Plaintiffs' attorneys' declarations and supporting documents
    suggest that they are seeking attorney's fees equal to the total cost of the litigation.  (*See, e.g.*,
21  James Decl. at 8 ("Telephone call to Yuser [sic] regarding Bond Claims; telephone call to
    Washington Attorney regarding Bond Claims; meeting with Gia regarding bond
22  claims . . . Research RCW 18.27.040 regarding Proceeding against Bond In Federal Court");
    Urban Decl. Ex. A. at 4 ("Review RCW bond provisions related to Trust bond claim.").)

1 │ re-file for default judgment against Mr. Schlatter they must correct the deficiencies

2 │ identified in this order and so move within 60 days of the date of this order.

3 │      Dated this 9th day of February, 2014.

4

5

6 │                                  JAMES L. ROBART

7 │                                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 23