UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMPLOYEE PAINTERS' TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CASCADE COATINGS, et al.,<br><br>Defendants. | CASE NO. C12-0101JLR<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |

## I.  INTRODUCTION

Before the court is Plaintiffs'[1] second motion for default judgment against Defendant Mark Schlatter pursuant to Federal Rule of Civil Procedure 55(b)(2).  (2d Mot. (Dkt. # 71).)  The court has reviewed the motion, the balance of the record, and the

---

[1] Plaintiffs include: the Employee Painters' Trust, the Western Washington Painters Defined Contribution Pension Trust, the District Counsel No. 5 Apprenticeship and Training Trust Fund, the Western Washington Painters Labor Management Cooperation Trust, the International Painters and Allied Trades Industry Pension Fund, and The International Union of Painters and Allied Trades District Counsel No. 5 (collectively "Plaintiffs").

ORDER- 1

applicable law.  Being fully advised, the court DENIES Plaintiffs' second motion for default judgment without prejudice as stated below.

## II.    BACKGROUND

**A.    Factual Background**

This is an employee benefits contribution case governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Plaintiffs originally sued two "Cascade Coatings" entities:  (1) Defendant Cascade Coatings, a partnership ("Cascade Partnership"), which is a partnership comprised of Defendants Walter James McLaughlin and Mark Stephen Schlatter (*see* Am. Compl. (Dkt. # 47) ¶ 4), and (2) Defendant Cascade Coatings, Mr. Schlatter's sole proprietorship ("Cascade Proprietorship") (collectively "Cascade Coatings").  (*See id.* ¶ 5.)

This dispute arises as a result of Cascade Coatings' involvement as a subcontractor on the Seattle-Tacoma International Airport Modernization Project ("Airport Modernization Project").  A Project Labor Agreement ("PLA") governs work done on the Airport Modernization Project and requires contractors to adhere to collective bargaining agreements.  (*See* Read Decl. Ex. A (Dkt. # 71) at 9.)  In order to work on any part of the Airport Modernization Project, a contractor must sign a "Letter of Assent" agreeing to the terms and conditions of the PLA and collective bargaining agreements.  (*Id.*)  The PLA and collective bargaining agreements require contractors to submit written reports and pay fringe benefit contributions to trusts benefitting local unionized construction workers.  (*See id.* at 26.)

On September 12, 2011, Mr. Schlatter executed a letter of assent agreeing to be bound by the terms of the PLA. (*Id.* at 2.) Subsequently, Cascade Coatings submitted two monthly reports to Plaintiff Employee Painters' Trust ("Painters' Trust") listing its employees who performed work covered by the PLA and the number of hours worked. (Read Decl. ¶ 24.) Cascade Coatings, however, did not submit any subsequent reports or payments to the Trust despite the fact that it continued to work on the Airport Modernization Project. (*See generally* 2d Am. Compl. (Dkt. # 47).) Thereafter, Painters' Trust initiated this lawsuit because it believed Cascade Coatings was in breach of its obligations to report and to make contributions pursuant to the letter of assent, the PLA, underlying collective bargaining agreements, and ERISA. (*Id.*)

**B.     Procedural Background**

On January 18, 2012, Painters' Trust filed suit against Mr. Schlatter, his business partner Mr. McLaughlin, and Cascade Partnership. (Compl. (Dkt. # 1) ¶ 4.) The complaint sought damages and injunctive relief for Defendants' failure to make employee benefit contributions. (*See id.* ¶¶ 24-35.) On June 27, 2012, Painters' Trust filed an affidavit of proof of service, which attested to having served "Defendant Cascade Coatings" with a copy of the summons and complaint on April 17, 2012. (Aff. of Serv. (Dkt. # 8) at 1.) Later, in the parties' joint status report filed on August 17, 2012, Painters' Trust implied that it had served Mr. Schlatter by stating that "[o]nly Walter James McLaughlin has not been served because he cannot be found." (*See* Joint Stat. Rep. (Dkt. 12) at 5.)

ORDER- 3

After the parties' joint status report, Plaintiffs amended their complaint twice. (*See generally* Dkt.) Initially, Painters' Trust amended its complaint on October 3, 2012. (Am. Compl. (Dkt. # 17).) The amended complaint named additional trust plaintiffs and additional defendants, including Cascade Proprietorship, the Port of Seattle, and various insurance companies. (*See id.* ¶¶ 5, 13-15.) The amended complaint asserted bond claims against the new insurance company defendants and a common law unjust enrichment claim against the Port of Seattle. (*See id.* ¶¶ 53-65.) Thereafter, Plaintiffs amended their complaint a second time on July 3, 2013. (*See* 2d Am. Compl.) Neither Mr. Schlatter, Cascade Proprietorship, nor Cascade Partnership has ever answered Plaintiffs' complaints. (*See* Dkt.)

Next, on August 27, 2013, Plaintiffs filed three motions for entry of default against Mr. Schlatter, Cascade Proprietorship, and Cascade Partnership, separately. (Dkt. ## 48-50.) The court denied these motions because Mr. Schlatter and Cascade Partnership were not properly served with Plaintiffs' first or second amended complaints. (*See* 9/30/13 Order (Dkt. # 51) at 9-10.) The court also ordered Plaintiffs to show cause why Cascade Proprietorship should not be dismissed for being an improperly named party in the suit. (*Id.*) In response to the court's show cause order, Plaintiffs filed a notice of voluntary dismissal as to Cascade Proprietorship. (10/15/13 Not. (Dkt. # 53).)

Subsequently, on November 6, 2013, Plaintiffs filed a motion to dismiss many of their bond claims under Federal Rule of Civil Procedure 41(a)(2). (Mot. to Dismiss (Dkt. # 61).) The court granted this motion to dismiss on December 2, 2013. (12/2/13 Ord. (Dkt. # 67).)

1    Plaintiffs renewed their motion for default against Mr. Schlatter on November 6,
2 2013.  (*See* 11/6/13 Mot. (Dkt # 62).)  The court granted Plaintiffs' motion because they
3 showed that Mr. Schlatter had been served with the summonses and complaints and that
4 he had never answered.  (11/15/13 Order (Dkt. # 64); *see generally* Dkt.)  At that time,
5 the court entered default only against Mr. Schlatter and not against any other defendant.
6 (*See generally* Dkt.)

7    On December 20, 2013, Plaintiffs filed their first motion for default judgment
8 against Mr. Schlatter.  (*See* Mot. (Dkt. # 68).)  The court denied Plaintiffs' motion for
9 several reasons.  (2/10/14 Order (Dkt. # 69).)  First, the *Frow* Rule prohibited the court
10 from entering default judgment against Mr. Schlatter.  (*Id.* at 7.)  Under *Frow*, "when one
11 of several [jointly-liable] defendants . . . defaults, judgment should not be entered against
12 that defendant until the matter has been adjudicated with regard to all defendants, or all
13 defendants have defaulted."  10A Charles Alan Wright & Arthur R. Miller, *Federal*
14 *Practice and Procedure* § 2690 (3d ed. 2013) (*citing Frow v. De La Vega*, 82 U.S. 552,
15 554 (1872)).  At the time of their motion, Plaintiffs had not properly dismissed Cascade
16 Partnership or Mr. McLaughlin.  (2/10/14 Order at 10.)  Accordingly, the court could not
17 enter default judgment against Mr. Schlatter until the court either entered default against,
18 //
19 //
20 //
21 //
22 //

ORDER- 5

or Plaintiffs properly dismissed, Cascade Partnership and Mr. McLaughlin. Second, the court determined that the *Eitel*[2] factors weighed against granting default judgment.[3] (*See id.*) Finally, the court noted that Plaintiffs had not properly substantiated their damages as required by the Federal Rules of Civil Procedure and the court's Local Rules. (*Id.* at 18.) Specifically, Plaintiffs did not (1) demonstrate that they were legally entitled to the amount requested, and (2) did not provide the court with a concise explanation of how the amounts were calculated. (*Id.* at 19.)

After the court denied their motion for default judgment, on April 10, 2014, Plaintiffs provided the court with notice that they were voluntarily dismissing Cascade Partnership and Walter McLaughlin pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Not. (Dkt. # 70).) That same day, Plaintiffs filed their second motion for default judgment. (2d Mot. (Dkt. # 71).) This motion is now before the court. With this motion, Plaintiffs filed additional evidence supporting their claim against Mr. Schlatter and the amount of damages requested. (*See generally* Read Decl.; Urban Decl. (Dkt. # 71); Walker Decl. (Dkt. # 71).)

---

[2] *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

[3] The court found that the first and sixth factors weighed in favor of default judgment but, on balance, the factors as a whole did not support default judgment at that time. (2/10/14 Order at 11.) Although Plaintiffs asserted that they were entitled to delinquent contributions, they did not support their claim with evidence establishing a prima facie case against Mr. Schlatter. (*Id.* at 12.) Without establishing the substantive merits of their claim, the second, third and fifth factors weighed against granting Plaintiffs' motion. (*Id.* at 13-14.) Finally, the fourth and seventh factors weighed against default judgment because of the large sum of money involved and the policy of favoring decisions on the merits. (*Id.* 14-15.)

### III.   ANALYSIS

**A.   Applicable Legal Standards for Default Judgment**

Entry of default judgment is left to the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default does not automatically entitle a plaintiff to a court-ordered judgment because granting or denying relief is within the court's discretion. *Id.* at 1092. In exercising its discretion, the court considers seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the amount and character of the relief that should be awarded." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012) (internal quotations and citations omitted). This is because at the default judgment stage, well-pleaded factual allegations relating to damages are not taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.1977); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, the plaintiff must "prove-up" his damages, and the damages sought must not be different in kind or amount from those set forth in the complaint. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp.

2d 1049, 1053-54 (C.D. Cal. 2011).  The court's role is to ensure that the amount of damages is reasonable and is demonstrated by the plaintiff's evidence.  *See* Fed. R. Civ. P. 55(b); *LG Elecs., Inc. v. Advance Creative Computer Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("[T]he evident policy of [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages.").

**B.    The Court Denies Plaintiffs' Motion Because Plaintiffs Do Not Substantiate Their Claim for Damages**

In its prior order denying Plaintiffs' first motion for default judgment, the court identified several problems with the support Plaintiffs provided for their damages claim.  First, Plaintiffs did not establish a prima facie case against Mr. Schlatter by showing the court that his employees actually worked on a project covered by the PLA.  (2/10/14 Order at 19.)  Second, although Plaintiffs submitted an audit report summarizing the total unpaid employer contributions and unpaid employer contributions by employee, Plaintiffs did not give any information as to the rates the auditors used to determine appropriate employer contribution levels for the various trusts.  (*Id.*)  Without this information, the court could not evaluate the reasonableness of the unpaid contribution damages.  (*Id.* at 19-20.)  Third, Plaintiffs did not state the rate they used to calculate the amount of interest owed on the delinquent contributions.  (*Id.* at 20.)  Further, without enough information to verify the reasonableness of Plaintiffs' interest calculation, the court could not verify Plaintiffs' claim for liquidated damages.  (*See id.* at 21.)  Finally, Plaintiffs overstated their claim for attorney's fees under 29 U.S.C. § 1132(g)(2)(D)

ORDER- 8

because in the total sum they included fees associated with their attorneys' work on claims not governed by the PLA. (*Id.* at 22.)

Plaintiffs' second motion for default judgment cures some of the deficiencies the court identified in the first motion. First, Plaintiffs provide the court with evidence establishing a prima facie case against Mr. Schlatter. Plaintiffs submit documentation showing that Mr. Schlatter agreed to be bound by the PLA's terms. (Read Decl. Ex. A at 2.) Plaintiffs also show that Cascade Coatings performed work on the Port of Seattle Bus Maintenance Facility, which is governed by the PLA (Walker Decl. Ex. A), and that Mr. Schlatter only reported two months of that work (Read Decl. Ex. H). This documentation is sufficient to address the court's first concern. Plaintiffs cure their initial motion's second and third deficiency by providing the court with the applicable rates for calculating delinquent contributions and liquidated damages (Urban Decl. Ex. B at 25), and the applicable interest rates (*id.* at 27-28). Finally, Plaintiffs address the court's concern about their attorney's fees calculation. Plaintiffs attach sufficient documentation to show the court that their calculation does not include hours worked on claims not covered by the PLA. (Urban Decl. Ex. A; James Decl. ¶¶ 3, 4, 5.)

Notwithstanding these corrections, Plaintiffs second motion leaves the court with serious concerns about the reasonableness of their damages calculations. Indeed, Plaintiffs' damages evidence is replete with errors and contradictions which render it impossible for the court to verify the proper amount of any award on default judgment. Plaintiffs' repeated failures to provide coherent and consistent evidence as to their damages is of grave concern to the court. Plaintiffs' second motion states that the

"amount claimed in unpaid fringe benefit contributions was derived from comparing total hours reported to the Trust Funds, which was 208.50, with the total hours reported by the Cascade Coatings proprietorship to Ferguson Construction and the Washington Department of Labor and Industries in its certified payroll." (2d Mot. at 6.) Having "relied on the certified payroll records," Plaintiffs claim they are entitled to delinquent contributions for 1,980 unreported hours. (*Id.*) The court, however, has reviewed the underlying records upon which Plaintiffs claim 1,980 unreported hours. (Walker Decl. Ex. A.) Based on that review, the payroll records reflect a total of only 1,214 hours worked on the Bus Maintenance Facility, including the 208.5 hours Mr. Schlatter reported. (*See id.*) It is unclear how Plaintiffs could derive a claim for nearly 2,000 unreported hours when the documentation they "relied" upon only demonstrates they are entitled to about half that amount.

Plaintiffs also claim that they relied on an audit performed by the Washington Department of Labor and Industries to calculate the number of unreported hours. (2d Mot. at 6.) Although the audit report shows a closer sum of 2,129.5 total hours worked on the Bus Maintenance Facility (Walker Decl. Ex. B at 47), the figure is still nearly 60 hours short of the 2,188.5 total hours Plaintiffs claim Cascade Coatings worked on the project.[4] (Walker Decl. ¶ 12.) The number of unreported hours forms the base for nearly all of Plaintiffs' damages calculations. Given the glaring inconsistencies in the

---

[4] The total 2,188.5 hours represents the sum of the 208.5 hours that Plaintiffs acknowledge Cascade Coatings reported and the 1,980 hours that Plaintiffs claim Cascade Coatings failed to report.

supporting documentation Plaintiffs provide to the court, Plaintiffs fail to meet their burden in "prov[ing]-up" their claim for damages.[5] *See Amini Innovation Corp.*, 768 F. Supp. 2d at 1053-54.

Finally, Plaintiffs submitted an audit report prepared by Lindquist LLP ("Lindquist") that, by their own admission, contains multiple errors. (*See* Walker Decl. ¶ 21; Urban Decl. ¶ 10.) Mr. Andrew Walker states in his declaration that the original Lindquist audit omitted 40 hours of work that should have been included. (Walker Decl. ¶ 21.) Although this error is not fatal on its own, Mr. Walker's statement is inconsistent with James Urban's declaration, which lists additional errors contained in the Lindquist audit. In his declaration, Mr. Urban states that not only does the Lindquist audit omit 40 hours of work, but that "the auditors used incorrect rates to calculate the liquidated damages and interest on the principal amount of delinquent fringe benefit contributions." (Urban Decl. ¶ 10.) Thus, the court cannot rely on the Lindquist audit to substantiate Plaintiffs' claim either. Not only are there serious errors in the calculations, but the inconsistency in testimony reinforces the general theme of inaccuracy permeating Plaintiffs' motion and supporting evidence.

The errors in Plaintiffs' supporting documentation make it mathematically impossible for the court to verify the reasonableness of their damages claim. Further, the

---

[5] The Urban declaration contains spreadsheets showing that Plaintiffs are entitled to damages for 1,980 unreported hours. (Urban Decl. Ex. B.) Mr. Urban, however, does not provide the court with back-up documentation showing that the base number of unreported hours contained in his spreadsheet is correct. Given the other deficiencies in Plaintiffs' motion, the court has no way to verify that Mr. Urban's calculations are accurate.

ORDER- 11

inconsistencies reveal potential "gaps in financial information presented to the [c]ourt." *Wecosign*, 845 F. Supp. 2d at 1085 (finding that a $6,000 difference between the court's and the plaintiffs' damages calculation, though small, revealed gaps in financial information). The court has serious concerns as to the accuracy and reasonableness of Plaintiffs' damages determinations. Accordingly, Plaintiffs once again fail to meet their burden of proving damages.[6]

The court has already provided Plaintiffs with an opportunity to cure the defects in their motion for default judgment. Nevertheless, district courts in this and other circuits have afforded plaintiffs second opportunities to cure deficiencies in evidence supporting damages at the default judgment stage. *See Orange Cnty. Elec. Indus. Health & Welfare Trust Fund v. Moore Elec. Contracting*, No. 11-CV-00943-LHK, 2012 WL 1623236, at *4 (N.D. Cal. May 8, 2012); *Tr. of the Metal Polishers Local 8 A-28A Funds v. Prestige Restoration & Maint., LLC*, No. 12-CV-4259-MKB, 2013 WL 6199977, at *4 (E.D.N.Y. Nov. 26, 2013); *Walker v. Innovative Concept Solutions Int'l*, CV No. 12-2046, 2013 WL 6184448, at * 3 (D.D.C. Nov. 27, 2013). Accordingly, the court grants Plaintiffs another opportunity to cure the deficiencies in their supporting documentation concerning damages. The court warns Plaintiffs that failure to adequately substantiate their damages claim a third time may result in a dismissal of their claim. Plaintiffs' third motion for default judgment, if any, must concisely show the court how Plaintiffs reached their total dollar amount and demonstrate that their calculations are reasonable and accurate. The

---

[6] Because Plaintiffs have failed to substantiate their claim for damages, there is no need for the court to enter into another analysis of the *Eitel* factors at this point.

motion must point the court to support in the declarations that substantiates the calculations in their motion. Specifically, the court directs Plaintiffs to address how they calculate the base number of unreported hours. Inconsistencies or inaccuracies in the motion or supporting declarations may result in denial of their motion for default judgment and dismissal of the remaining claims in this action. *See Aldabe*, 616 F.2d at 1092 ("The district court's decision whether to enter a default judgment is a discretionary one."); *Walker*, 2013 WL 6184448, at *3 (warning Plaintiffs that third failure to adequately substantiate damages will result in denial of default judgment and dismissal of case).

## IV.     CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' second motion for default judgment against Mr. Schlatter (Dkt. # 74), without prejudice to re-file. If Plaintiffs wish to re-file a motion for default judgment against Mr. Schlatter, they must correct the deficiencies identified in this order and so move within 20 days of the date of this order. The court further warns Plaintiffs that failure to timely re-file a motion for default judgment may also result in dismissal of their claim.

Dated this 12th day of May, 2014.

JAMES L. ROBART
United States District Judge